# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**MARY ANN FORTIN,**

        **Plaintiff,**

**-vs-**　　　　　　　　　　　　　　　　　　　**Case No. 6:09-cv-887-Orl-35DAB**

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

_____

## MEMORANDUM OPINION & ORDER

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying her claim for disability insurance benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case. Oral argument has not been requested.

For the reasons that follow, the decision of the Commissioner is **REVERSED** and **REMANDED** as set forth herein.

### *I. BACKGROUND*

**A.    Procedural History**

Plaintiff filed for a period of disability and disability insurance benefits on April 15, 2005, alleged an onset of disability on February 29, 2004, due to a left foot fracture and depression. R. 30-31, 64-66. Her application was denied initially find upon reconsideration. R. 54-55, 60-61. Plaintiff

requested a hearing, which was held on May 7, 2008, before Administrative Law Judge Michael D. Shilling (hereinafter referred to as "ALJ"). R. 634. In a decision dated May 28, 2008, the ALJ found Plaintiff not disabled as defined under the Act through the date of his decision. R. 17-29. Plaintiff timely filed a Request for Review of the ALJ's decision, which the Appeals Council denied on March 26, 2009. R. 5-9. Plaintiff filed this action for judicial review on May 26, 2009. Doc. No. 1.

### B.   Medical History and Findings Summary

Plaintiff was 54 years old at the time of the hearing. R. 639. She has a high school education and training as a licensed practical nurse ("LPN"). R. 639. Plaintiff had worked for 27 years at the same hospital; however, in 2000, she moved to Florida and, while waiting for her nursing license to come through in Florida, she worked as the manager of a bar. After her license came through, she returned to nursing and did home health care nursing. R. 640. Plaintiff's date of last insured is December 31, 2008. R. 81.

Plaintiff's medical history is set forth in detail in the ALJ's decision. By way of summary, Plaintiff complained of pain in her left foot following several surgeries, and pain in her back and right hip. R. 641-45. After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered status post left foot fractures and surgeries, which were "severe" medically determinable impairments, but were not impairments severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 19, 24. The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform light work, except she could lift/carry 20 pounds occasionally and 10 pounds frequently; stand/walk a total of 6 hours and for 3 hours at a time; and sit a total of 8 hours during an 8-hour workday, with certain other limitations. R. 24.

Based upon Plaintiff's RFC, the ALJ determined that she could not perform past relevant work. R.28. Considering Plaintiff's vocational profile and RFC, the ALJ applied the Medical-Vocational Guidelines (the grids), 20 C.F.R. Pt. 404, Subpt. P, App. 2, and, based on the testimony of the vocational expert ("VE"), the ALJ concluded that Plaintiff could perform work existing in significant numbers in the national economy as a medical records clerk, and a unit clerk. R. 29. ] Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision. R. 29.

Plaintiff now asserts three main points of error. First, she argues that the ALJ erred by finding she had the RFC to perform light work because she could not do prolonged walking. Second, she contends the ALJ erred in assessing her mental limitations. Third, she asserts that the ALJ erred by improperly applying the pain standard and in evaluating her credibility. For the reasons that follow, the decision of the Commissioner is is **REVERSED** and **REMANDED.**

## *II.  STANDARD OF REVIEW*

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir.

2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f).

## III. ISSUES AND ANALYSIS

**RFC - prolonged walking and subjective complaints**

Plaintiff argues that the ALJ should not have found her able to perform light work because she could not engage in prolonged walking. The Commissioner argues the ALJ properly evaluated the medical opinions and found Plaintiff could perform light work with certain limitations.

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Id.*

Pain is a non-exertional impairment. *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The ALJ must consider all of a claimant's statements about her symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote*, 67 F.3d at 1560 (quoting *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Pain alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

The ALJ in this case found that Plaintiff was able to perform a wide range of light work, including standing and walking a total of 6 hours in an 8 hour work day for about 3 hours at a time. R. 24. He gave "significant weight" to Dr. Kutner's opinion "because he personally examined the claimant and the limitations he assessed are reasonably consistent with her type of impairment and surgical history." R. 27. The ALJ "reduce[d] the residual functional capacity to include Dr. Kutner's functional limitation[s], because these are reasonably consistent with her type of impairment" and he

-5-

"further reduced the [RFC] in consideration of the claimant's subjective complaints." R. 27. Plaintiff contends that she could not do the prolonged walking required to perform light work and the ALJ misinterpreted assessment of the consulting examiner, Dr. Kutner.

Plaintiff also argues that the ALJ erred in his assessment concerning Plaintiff's subjective complaints that she could not walk for "too long" or it made the pain worse. R. 645. The ALJ's determination that Plaintiff had the RFC for light work, based in part on his discounting of Plaintiff's subjective complaints, relied on his interpretation of the VA records and Dr. Kutner's opinion. The ALJ found:

> No doctor recommended the claimant stay off her foot and the consultative examiner limited the claimant to standing three hours at a time before she needs a break. This was prior to her last foot surgery, which improved her symptoms as evidenced by her decreased complaints in VA records. Treatment notes failed to demonstrate any foot swelling which would justify her need to elevate her foot. Further, there is no objective evidence or subjective complaints in treatment notes to support a need to elevate her foot. . . .
>
> Regarding the claimant's left foot pain, the medical evidence supports foot fractures and two or three surgical procedures. However, the medical evidence, including x-rays, does not support her allegation that an orthotic device was put in upside down[1]. The medical evidence supports complaints of pain and some limitations of her ability to stand/walk, but not a complete inability or *even significantly limited ability to stand/walk*. There is no medical evidence to support a need for a cane, scooter, elevate her foot, or to take naps. The medical evidence fails to show any limitation of her ability to ambulate as she was able to be the primary caregiver for her totally disabled husband. Thus, the undersigned concludes the claimant is able to engage in light exertion. The undersigned accepts Dr. Kutner's conclusion that the claimant can stand three hours without a break and cannot engage in extensive walk[ing].

---

[1]The ALJ may have too harshly judged Plaintiff's description of what was wrong with her left foot. The Court views it as accurate in general layman's terms, *i.e.*, that the orthotic implant Plaintiff described as "put in upside down" in her understanding, was described in the VA Podiatry Department records as "detached," failed, and "raised and nonfunctional." R. 315, 370. In addition, the ALJ's reliance on Plaintiff's inability to stop smoking as a factor undercutting her credibility (R. 25) about her left foot pain is misplaced; the Commissioner's reliance on it – relating to a left foot impairment, *not* a pulmonary or cardiac condition – merely emphasizes the error. Doc. 9 at 13.

R. 26 (emphasis added). Records from VA note that Plaintiff's original prosthetic device in the first metatarsal phalanx base was detached and was the possible reason for the implant failure; at one point, her first metatarsophalangeal joint was "raised and nonfunctional"; and even though the joints at the second, third and fourth metatarsal bases had healed, they were "misaligned." R. 315, 370. The Court finds that the ALJ's determination that Plaintiff could walk for "up to 3 hours at a time" and his failure to fully credit Plaintiff's testimony that she would have pain from walking too long were erroneous and were not based on substantial evidence.

Plaintiff had a long history of problems and corrective surgeries to her left foot. At some time prior to 1999, she had to have the joint replaced in her left great toe. After that surgery was performed, the great toe was hyperextended at the metatarsal joint. R. 168. In June 1999, Plaintiff fractured her left foot. R. 172. On June 2, 1999, she underwent a closed reduction, screw fixation and percutaneous pinning of lisfranc fracture-dislocation of the left foot. R. 172. Plaintiff had a "palpable prominent pin at surgical site" after her surgery in 1999. R. 163. She also fractured the metatarsals at the second, third and fourth digits. R. 168. She was casted, and pins and screws were then placed; they were removed in August 1999 and a soft cast was put on, but that was too painful so she was put back into a hard cast, removed in early September 1999. After a course of physical therapy, Plaintiff returned to work in October of 1999. R. 166. However, she experienced an increase in discomfort secondary to being on her feet for prolonged periods of time. R. 166.

On November 16, 2000, after moving to Florida, Plaintiff met with Dr. Ann Asuncion of the Watson Clinic to get established. R. 215. Dr. Asuncion diagnosed Plaintiff with left foot pain status post surgery. R. 214. Dr. Asuncion prescribed indocin for the pain. R. 214. At that time, Plaintiff was working as the manager of a bar. R. 215. By September of 2001, Plaintiff was again working as a nurse, doing home health care. She suffered a work related injury when she was assisting a child

with cerebral palsy and missed a step. R. 198. She had pain in her right knee and wrist and a tender left foot. R. 198. X-ray demonstrated questionable old versus new fracture of the second and fourth metatarsals. R. 198. By April 2003, Plaintiff was still having multiple problems with her left foot and told her doctor that she was unable to do full duty work as an LPN because of those problems. R. 197. Dr. Asuncion referred Plaintiff to an orthopaedic doctor for possible foot surgery. R. 196-197.

On May 24, 2004, Plaintiff treatment at the Veterans Administration ("VA") through her new husband's coverage as a disabled veteran. R. 432. On December 27, 2004, Plaintiff was seen by the podiatry clinic at the VA, where they noted that she had had an artificial joint placed in the first metatarsal phalangeal joint of the left foot, however, the joint never went into place and the big toe just stayed up. R. 380. Additionally, they noted that she had fractured all of the metatarsal bones on the left foot except the fifth one. R. 380. Plaintiff complained of pain in the first metatarsal phalangeal joint but also in the midfoot area. Most of the pain occurred while walking. R. 381. On January 4, 2005, at the VA hospital, Plaintiff underwent a first metatarsal phalangeal joint fusion with bone graft from the calcaneous with internal fixation in the left foot. R. 370. During the operation it was noted that there were arthritic bone changes with a previous double stemmed artificial joint at the plantar aspect of the proximal phalanx base which was detached, and was the possible reason for the implant failure. R. 370. Notes from the surgery, indicated:

> She had an implant arthroplasty performed of the first metatarsophalangeal joint years ago, which has subsequently failed resulting in a short, raised and nonfunctional first metatarsophalangeal joint. Other problems in the past have included stress fractures of the second, third, and fourth metatarsal bases, which have healed but are malaligned.

R. 315.

By April 2005, Plaintiff was complaining that her foot hurt all along after the surgery, but was worse in the past 2 weeks. R. 350. The pain was in the bottom of the middle area of the left foot. R.

-8-

350. On April 11, 2005, X-rays of the left foot revealed "postsurgical fusion changes with no evidence of any identifiable fusion as of yet." R. 288.  On July 11, 2005, Plaintiff reported to the VA that she was continuing to have chronic left foot pain.  It was noted that she had "minimal response" to the January 2005 surgery. R. 281. Plaintiff then underwent injections into the foot without long-term relief. R. 280. Her VA records note that she had "severe flat foot defor[mity] with [degenerative joint disease] of the mid foot, and she needed a custom orthotic. R. 278. However, because of Plaintiff's type of insurance, the VA could not pay for the orthotic. R. 278.

On July 5, 2005, Social Security sent Plaintiff for a consultative examination with Dr. Morris Kutner. R. 259-261.  He did not have any of Plaintiff's records available to him when he performed his evaluation. He noted Plaintiff's reported history that she had trouble with an prosthetic device that was improperly installed in her left foot and she had numerous fractures of the foot. R. 259. As a result, she told him that she could not spend too much time walking because of the pain. R. 259. Dr. Kutner stated that Plaintiff was using a cane for ambulation, but that the use of the cane seemed inappropriate.  R. 260.  Dr. Kutner found "no evidence of any arthritis, inflamation, heat, or tenderness in any joint." R. 260. The range of motion within her ankles and toes were within normal limits and there was no pain or inflamation noted at the site of the surgical scar[2]. R. 260. X-rays of the left foot showed a prosthetic device with four pins in the distal metatarsal joints of the great toe and mild evidence of degenerative disease in the tarsal-metataso joints. R. 262. He diagnosed her with left foot pain and stated that she should not have a job where she was required to stand for more than 3 hours at a time or do extensive walking. R. 261.   Plaintiff continued to be treated at the VA and in November 2006, she complained of continued pain in her first metatarsal phalangeal joint area

---

[2]Dr. Kutner indicated the surgical scar was on the right foot, but the Court assumes he meant the left, since the left foot had several surgeries performed.

and first innerspace to distal end of left 2nd digit. R. 588. She was still unable to get the custom orthotics that the VA had prescribed. R. 588. Plaintiff was also treated in the VA psychiatric clinic for complaints of mood swings. R. 100. Plaintiff complained of irritability, especially towards her husband, whom she had to care for because of his disability. R. 100. She was diagnosed with Depressive Disorder/ NOS, and started on Prozac. R. 103. The psychiatrist opined that Plaintiff suffered from "care-giver burden." R. 102.

Dr. Henley on June 6, 2005, performed a psychological consultative examination of Plaintiff for the Social Security Administration. R. 238-40. Dr. Henley diagnosed Plaintiff with Major Depressive Disorder, recurrent, moderate; and Pain Disorder associated with both Psychological Factors and General Medical Condition. R. 240. Based upon her response to serial seven testing, the doctor indicated that Plaintiff would have problems with mental calculations and complex problems. R. 240. Plaintiff continued to be treated by the VA for her depression over the years. R. 593, 601, 608. On July 2004 and October 2005, state agency non-examining psychologists found that Plaintiff would have moderate limitations in her ability to concentrate due to her psychological symptoms. R. 255, 483. However, her condition appeared to improve once she separated from her spouse in mid- to late 2007, and her stress level decreased. R. 567. She told the VA psychiatrist that she did not "think she needed" any anti-depressants and her concentration was good at that time[3]. R. 567.

At the hearing on May 7, 2008, Plaintiff testified that her foot pain increased with standing or walking too long. R. 645. She indicated also that she had concentration problems and was unable to perform such tasks as balancing the checkbook. R. 647. Ms. Fortin testified that at one time her husband's health had deteriorated to the point where she had to help him get up and into a chair, make

---

[3] Because the Court remands the case on the basis of the ALJ's erroneous determination that Plaintiff could walk for up to three hours, it is not necessary to reach this issue, but it will be remanded to the ALJ for further consideration.

his meals, and help him with his shower or bath. However, his health had improved as he got his diabetes under control and he was up and around and could drive again. R. 647-49. Plaintiff testified that when he was at his worst and she had to help him get up, bathe and dress, she was on her feet for about 15 to 20 minutes at a time, several times a day. R. 648.

Plaintiff argues that the ALJ's finding that she could walk for three hours at a time, apparently based on Dr. Kutner's opinion, is not supported by substantial evidence. The ALJ stated that he "accepts Dr. Kutner's conclusion that the claimant can stand three hours without a break and cannot engage in extensive walking." R. 26. Plaintiff contends that the ALJ mischaracterized Dr. Kutner's opinion to find that Plaintiff could *stand* for up to three hours at a time as Plaintiff being able to – in the ALJ's opinion – *stand and walk* for three hours at a time, even though Dr. Kutner opined that Plaintiff could not do any "extensive walking" (R. 261), and three hours of walking at a time would be "extensive walking" Plaintiff argues.

The Commissioner argues that the ALJ relied on, not just Dr. Kutner's opinion, but on the entire record and properly considered both the state agency medical consultant's RFC assessments as well as Dr. Kutner's evaluation in determining that Plaintiff could walk for up to three hours per day. R. 27. The Commissioner highlights certain statements from Dr. Kutner's notes:

> Dr. Kutner found "no evidence of any arthritis, inflamation, heat, or tenderness in any joint." (Tr. 260). The range of motion within her ankles and toes were within normal limits and there was no pain or inflamation noted at the site of the surgical scar on her right foot (Tr. 260). Although Plaintiff walked with a cane, Dr. Kutner observed that such usage "seemed to be inappropriate." (Tr. 260). Moreover, she was able to walk in tandem, walk heel to toe, get up from a chair, and get on and off the examination table (Tr. 260). Dr. Kutner opined that Plaintiff should not have a job that required her to stand for more than three hours at a time without resting and should not have a job that required extensive walking (Tr. 261).

Doc. 9 at 6.

The Commissioner argues that the ALJ was entitled to consider and rely on the state agency consultants' interpretation of Dr. Kutner's evaluation in reaching the RFC finding. The Court agrees with that argument in a general sense, however, the ALJ is not entitled to pick and choose portions of the opinion of Dr. Kutner's report (confirmed by the state agency non-examining physicians) and exclude or mischaracterize those portions of Dr. Kutner's report that do not support a light work RFC, such as a limitation of no "extensive walking." R. 260. Dr. Kutner's opinion of Plaintiff's abilities was: "Her functional assessment was such that this claimant should not have a job that requires her to stand for more than 3 hours at a time without being given the opportunity to rest. She should not have a job that requires her to do extensive walking." R. 261. The ALJ most likely just mischaracterized Dr. Kutner's opinion as Plaintiff suggests – finding she could stand *and walk* for three hours – rather than just stand for up to three hours. This was clearly error in light of Dr. Kutner's actual opinion, which was that Plaintiff could not have a job that required "extensive" walking.

Moreover, strictly speaking, Dr. Kutner underestimated Plaintiff's limitations in that records showed that Plaintiff did have diagnosed arthritis in her left foot in 2004 to 2005. R. 310. VA records from July 2004 and a January 2005 radiology report that Plaintiff's "old metatarsal fractures appear unchanged" and showed "traumatic arthritis first MPJ left foot, first MPJ fusion." R. 291-92, 310. Following an October 2004 CT scan, the impression was "surgical changes surrounding the first metatarsophalangeal joint, compatible with the patient's reported history. Old fracture of the proximal fourth metatarsal. Degenerative changes in the mid foot." R. 296. In January 2005, the VA doctors performed a first metatarsal phalangeal joint fusion with bone graft from the calcaneous with internal fixation in the left foot for a "failing implant in 1st MPJ left foot," where she had "bone with mild chronic inflamation, fibrosis, foreign body giant cells reaction to non polarizable refractile material,

and osteoclastic activity." R. 310, 370. During the operation it was noted that there were arthritic bone changes with a previous double stemmed artificial joint at the plantar aspect of the proximal phalanx base which was detached, and was the possible reason for the implant failure. R. 370. In April 2005, Plaintiff complained that the bottom of her left foot hurt in the time since the surgery, but was worse in the past two weeks. R. 350. In April 2005, X-rays of the left foot showed "no evidence of any identifiable fusion as of yet." R. 288. In July 2005, Plaintiff continued to complain of chronic left foot pain to the VA; she had "minimal response" to the January 2005 surgery and injections failed to provide long-term relief. R. 280-81. Although she needed a custom orthotic, her insurance did not cover it and she did not get one. R. 278. Plaintiff's left foot condition had been diagnosed with arthritis at the VA, even if the inflamation was not present on the date of Dr. Kutner's examination[4].

The alternative basis for the ALJ's RFC opinion, as argued by the Commissioner, is equally flawed. The Commissioner points to the state agency non-examining physicians' opinions (allegedly relied upon by the ALJ[5]) that Plaintiff could stand and walk "about six hours in an eight-hour work day" (with normal breaks), showed no signs of arthritis, and had normal motor strength throughout her body. R. 264, 462. The non-examining reviewing physicians' opinions also ignore Dr. Kutner's limitation that Plaintiff could not "do extensive walking," when they found Plaintiff could stand and walk about "six hours out of eight".

When the only functional assessments are from a consultative examiner and the state agency non-examining reviewing physicians, "the regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker."

---

[4]"Arthritis" can refer to inflammation of a joint or a state characterized by inflammation of the joints. Stedman's Medical Dictionary (28th ed. 2006).

[5]The Court is not convinced that the ALJ relied on the reports of the state agency physicians, since he practically quoted (or misquoted) Dr. Kutner's report.

SSR 96-6p, 1996 WL 374180, at *2 (citing 20 C.F.R. §§ 404.1527(f), 416.927(f)). "[T]he opinions of physicians or psychologists who do not have a treatment relationship with the individual are weighed by stricter standards, based to a greater degree on medical evidence, qualifications, and explanations for the opinions, than are required of treating sources." *Id.* at *2. "[T]he opinions of State agency medical and psychological consultants and other program physicians and psychologists can be given weight only insofar as they are supported by evidence in the case record, considering such factors as the supportability of the opinion in the evidence including any evidence received at the administrative law judge and Appeals Council levels that was not before the State agency, the consistency of the opinion with the record as a whole, including other medical opinions, and any explanation for the opinion provided by the State agency medical or psychological consultant or other program physician or psychologist. The adjudicator must also consider all other factors that could have a bearing on the weight to which an opinion is entitled, including any specialization of the State agency medical or psychological consultant." *Id.* at *7.

The opinion of a non-examining physician "is entitled to little weight and taken alone does not constitute substantial evidence to support an administrative decision." *Swindle v. Sullivan*, 914 F.2d 222, 226 n.3 (11th Cir. 1990). "The opinions of non-examining, reviewing physicians . . . when contrary to those of examining physicians are entitled to little weight in a disability case, and standing alone do not constitute substantial evidence." *Hoffman v. Astrue*, 259 F. App'x 213, 217 (11th Cir. 2007). In this case, each of the non-examining reviewing physicians based their opinions of Plaintiff's exertional limitations on Dr. Kutner's examination of July 5, 2005 (*see* R. 264, 462) citing either the date of his report or verbatim observations from portions of his report ("well healed scar, normal motor strength throughout"), but the reviewing physicians opined that Plaintiff could stand

-14-

*or walk* for six hours in an eight hour day, which completely ignored Dr. Kutner's opinion that Plaintiff could not have a job that required "extensive walking."

In addition, the reviewing physicians were clearly not as specialized as the doctors at the VA who were treating Plaintiff, and possibly not as specialized as Dr. Kutner. One reviewing physician's name is illegible (R. 264-70); the specialty of the other physician (Dr. Bigsby) is family medicine and geriatrics. R. 468. Dr. Kutner lists no specialty on his letterhead for "GSW Consulting/Target Testing." In contrast, Plaintiff was treated in the specialized Podiatry Department at the VA, and a VA radiologist (Dr. Devillasante) diagnosed her with arthritis in the left foot. R. 288-93. VA records from a January 2005 radiology report that Plaintiff's "old metatarsal fractures appear unchanged" and showed "traumatic arthritis first MPJ left foot, first MPJ fusion"; April 2005 records show there was no evidence of fusion "as yet." R. 288-93. Unfortunately, Plaintiff's treating physicians at the VA did not provide a functional limitations analysis[6], and Dr. Kutner's opinion seems at least his best estimate of Plaintiff's limitations based on her history as she reported it to him; however, Dr. Kutner candidly admitted that he did not have the benefit of Plaintiff's medical records: "She claims that she has had 5 different surgeries on her left foot but I do not have any of those medical records." R. 259.

Because the ALJ misquoted or mischaracterized Dr. Kutner's opinion finding that Plaintiff could walk for "up to three hours", when he actually limited her from "extensive walking," the ALJ's opinion was not based on substantial evidence. As Plaintiff points out, under the SSA definition, "a job is in [the light work] category when it requires a good deal of walking or standing." 20 C.F.R. §404.1568(b). SSR 83-12 further indicates that most light work jobs require "prolonged standing or walking." SSR 83-12. The VE testified that if Plaintiff was limited to sedentary work in this case, her

---

[6] Nor would Plaintiff's impairment be evaluated as she was not a veteran claiming disability, but received services as a spouse.

skills acquired from nursing would not transfer to any sedentary work. R. 657, 660. Plaintiff contends at age 54, with no transferrable skills, rule 201.14 would require a finding of disability if she were limited to sedentary work, citing 20 C.F.R. Pt. 404, Subpt. P. Appendix 2, Rule 201.14.

On remand, the ALJ will be required to credit Plaintiff's subjective complaints of pain in her left foot to the extent that she cannot perform "extensive" or "prolonged walking."  The ALJ will also determine whether Plaintiff's had limitations in concentration, persistence and pace subsequent to October 1, 2007 (but before her date of last insured of December 31, 2008), and the impact on her RFC.  Finally, the ALJ will determine whether there was other work in the national economy (with the assistance of a VE, if necessary) that Plaintiff could perform (prior to the date of last insured) given Plaintiff's limitations.

### *IV. CONCLUSION*

Accordingly, the Court **REVERSES** and **REMANDS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g).  The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Orlando, Florida on July 30, 2010.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record